The Honorable Judge of the United States Court of Appeal for the 4th Circuit. You may be seated. Third case today, United States v. Lefemine. Mr. Brown. Mr. Brown, good to have you with us. Thank you, Judge. Yes, sir. Good to be back here. May it please the Court. This case involves right to a jury trial and the constitutional dynamics of it. A legislative scheme cannot determine a constitutional limit. However, in this case, you'll see a legislative scheme can say what the legislature believes is serious as a reflection of what society believes is serious. It also can set an objective standard and one that will promote consistency. And if you look at the interplay in the development of the law regarding the Sixth Amendment, right to a jury trial, and what's known as a petty offense exception, if you look at that development, 1780s when it's espoused in the late 1800s through the due process revolution of the 1960s, early 1970, and then into the Information Age in the 1990s, you can see that both of these branches worked cognizant of each other and respecting each other. Before we get to the Constitution. Yes, ma'am. You had two arguments in your brief. One was that constitutionally, even if the max was six months. Yes, ma'am. That's all right. There should be a right to a jury. But you had a preliminary argument that, in fact, Mr. Lefamine was subject to a year's imprisonment. Yes, ma'am. Which I think would mean that's not a constitutional. That's just a question of what was he actually subject to under the indictment and the statute, right? That's correct. And the indictment charged him with obstruction by intentionally intimidating and interfering or attempting to intimidate and interfere, right? Yes, ma'am. And the statute defines intimidate. It's defined in this particular statute as placing a person in reasonable apprehension of bodily harm. How does that not involve violence or a threat of violence? I don't know. And I'll be honest, some of the other circuit cases that address this, that's not the way it was couched there. They used interfere and not intimidate. And in this case, if you look at the record, when Judge Anderson issues his judgment or his verdict in this, he just recites the indictment language. And the word intimidate is actually in his description of what he found that Mr. Lefamine had done here. Because we have cases about, you know, in a different context, but when we have to analyze crimes of violence all the time. Yes, ma'am. And we have cases, we have cases like McNeil where we look at length at intimidation and we always find it to involve a threat of violence. Yes, ma'am. And here it's defined to put a person in reasonable apprehension of bodily harm. And I'm curious how that can be a nonviolent offense. I don't think it can. And, Judge, there is some question about the way the statute is written where there's an exception that then creates a lesser. And I say that because that probably looks more confusing now after apprendee than it did back before when I would assume this would be considered a sentencing factor back then. But interestingly, if that was merely a sentencing factor in mitigation, you would still get the one-year penalty under the indictment. And if a court found that it was purely nonviolent obstruction, that then in turn it would have still been a jury trial. So, Judge, I would agree that this is a constitutional avoidance way of addressing the situation we have in this case. I do believe that the indictment was not amended. With all respect, I believe it was intended to be. Well, they took out, I mean, you know, on the record the court accepted them taking off the 1 after the B, right? That's correct. That's an amendment. Well, they said please file the amended indictment soon after that statement was made. But did they ever take out the allegation of intimidation? No, ma'am. And then again, Judge Anderson actually discussed that language. That language is in the same paragraph where he finds my client guilty. But I think if you look at it, it says that counsel stated that we expressed the consent to the second amendment. We agree with that. Yes. Yes, ma'am. And I think it's a little formalistic, but I did in my brief mention that if he would have been convicted and sentenced, let's say forget about the jury trial issue, if he would have been convicted and sentenced to one year, he would have come here and argued what about the charging document not conveying jurisdiction over the one-year offense. And I know that's not what's before you all right now, but I have a hard time being able to come up with an argument that somebody in that situation would be able to make, because on its face it appears to allege a one-year offense on the piece of paper. And I know, again, it's very formalistic that it wasn't actually amended. But as the Federal case law talks about, when you look at somebody's prior record for purposes of whether it was a prior conviction for a serious crime of ‑‑ serious felony drug crime or a crime of violence, we look at the charging document. And we wouldn't go back in and look at the transcript. And on the face of this charging document, and the only charging document in this case, it does appear to allege a one-year offense. So is your position that I think a status conference was like in November of 23 or something like that. Yes, ma'am. And at that time the government made the notice. But is notice of amendment, is your position that that would be insufficient? Let me compare it to a civil case, because we talk about amended complaints. Excuse me. The litigants before me talk about amended complaints. If you move to amend your complaint, you add whatever it may be, a party, a cause of action, et cetera, or a defense or an affirmative defense or a counterclaim, and the other side agrees to it, if you never file it, there's never an amendment to it. And so I think that's very formalistically, but I do think that's a problem for the government. But my guess is they would probably say the amended penalty sheet was there. I get what you're saying, but I assume that that would be. I agree. And that is their response, I believe, in their brief. And I didn't lead with this issue because the question that was posed on the oral argument notice was my second question. But I do believe that that is still accurate, and it is not a constitutional question. It's a matter of indictment. And I know it's no longer after Cotton. We don't deal with subject matter jurisdiction. That's not the same question it was before Cotton. But we still have this issue that the indictment has to allege the crime. And I'm not saying that it's a scrivener's error that we're dealing with. It was alleged as a B-1 penalty. That's what listed the indictment. That's what he was initially arraigned for, and it does have the intimidate language. So you're saying the indictment was not amended? That's correct. It was agreed. It was allowed to be amended and consented to. But Judge Anderson said to the contrary and said he had three circuits that he was ruling consistent with. Judge, he did try the case as if it had been amended. We will agree with that because, and I'll point out in my brief, he actually stopped my client from examining one of the witnesses about whether or not he had done anything that was a threat or use of force against anyone. And there was an objection sustained. And Judge Anderson said that's not relevant. You're not charged with that. And we agree that he did. And he wrote in his opinion. Yes. Here, defendant faced a maximum term of six months. That's correct, Your Honor. Nonetheless, the only indictment, there's no information. There's no other type of filing. There's no amended indictment. There's no superseding indictment. And for what it's worth, he was indicted. And if it was, in fact, a petty offense, he would not have to be indicted on it. And he was indicted because that was the case. He can be indicted. That's correct, Judge. Your injury could charge somebody with a misdemeanor or a petty offense with anything. Yes. Absolutely, Your Honor. But they could not present a one-year offense through an information. Well, the judge says he was presented with a six-month offense on page three of his opinion here. And we just cannot. And I was not the trial lawyer. His order is called an order on defendant's right to a jury trial. Yes, sir. And I do see that. There is no question. He says the defendant faces a maximum term of six months. And, Judge, I understand that it's tried that way. Defenses carrying a prison sentence of six months or less are presumed to be petty. There you go. Judge, we certainly understand that. We agree that presumption of pettiness. And he recognized, he said, the Fourth Circuit Court of Appeals has not had an opportunity to address this issue. Other courts of appeals have. Yes, that's correct, Judge. And he cited three of them, I think. Second, seventh, and eleventh. That's correct. That's correct, Judge. However, what we do have is a consistent treatment by the Supreme Court. Not one decision by the United States Supreme Court regarding an individual's right to a jury trial exceeds the petty offense statute. And, in fact, the opinions especially, because 1937, we go to a statutory maximum methodology. We no longer look at the penalty imposed. We look at what you do face, because common law did not work with all the new offenses coming after the Industrial Revolution. And so then in 1948, they passed the first petty offense statute. It is statute one in the criminal code. And aside from the impact on the right to a jury trial, that statute has no other significance in 1948. Now we know petty offenses can be treated differently under Rule 59 charging documents, or you don't get a precedence report with a guidelines calculation. But hasn't the Supreme Court told us to place the maximum emphasis on the prison term that a person faces? But, you know, they've said it, you know, five or six different ways to emphasize that what matters most for determining whether there's a petty offense that doesn't have a right to a jury trial is how much time a person faces in prison. Now, we could, we might disagree with the Supreme Court that six months should be the line, but they've drawn the line at six months when it comes to a jury. In the six months, we see the six months develop as it goes through. We have Sheff says six months is petty. We have Duncan applying it to the states, and that says two years is not petty. We have Ford in between. It's a contempt case. I won't address that, but it does talk about probation. Then we have Baldwin. And Baldwin comes in and says that one year is too much. Then, well, skip Munez because the only jury trial issue constitutionally in Munez is the corporation. But when we get to Blanton, the case that comes up next, it talks in there about a fine and other things. And this is important because Soderno is the leading case on the FACE Act. There's no question about it. Posner's opinion is the leading one, and that's adopted by the other circuits. In fact, almost in full, they just cite Soderno, Soderno, Soderno. So Nutterberger, Ketchum, and Dugan, all of them cite Soderno. But what we do have in that is, and they never say it, the fine in Blanton falls within what at the time is 18 U.S.C. Section 1. So it's still with the statute. And as I mentioned earlier, not one U.S. Supreme Court case disregards that because, Judge Rushing, as you mentioned, the Court says we look at statutory penalty. But before that, they said you look at the legislature's treatment of it and that they should respect the legislature's treatment. And here's what we know the legislature does. They pass laws that apply to other laws. So whether you are eligible for good time credits or whether you get a pre-sentence report or whether you have a fine of a certain amount, those are not all written into one individual criminal statute. Those are all cross-referenced. On this, we have at least until 1987. By 1984, 18 U.S.C. Section 1 is then repealed. And it stays in effect for some period of time. In 1987, they passed the subsequent 18 U.S.C. 19. But what we know is that every one of these cases is consistent with those two statutes in the legislature. But that's not the test that they've articulated, right? Now, you might be finding something that they haven't articulated, that it's consistent with something that they haven't said is the test. But when the Supreme Court's directed us that legislative determination of seriousness is what we should be looking for, they've pointed us, you know, they've emphasized what matters most, that the best indicator of that is the prison time that someone faces. And then they say, you know, unless the other penalties are so severe that they clearly reflect that despite, you know, only facing six months in prison, Congressman, for this to be considered a serious offense. So what's your argument that, you know, $10,000 is so severe that it shows us that? I don't think the Court hasn't pointed us just to the statute and said, well, if it's $1 more, that's too severe. There's no goal post on the other side, Ezra, right now from the U.S. Supreme Court. And that's what I mentioned. Every single case that has gone up there, Blanton was a $1,000 fine when it was $5,000. So it was under it. Nakata is the one that talks about, well, Nakata's five times what the Court had in Blanton still falls within the statute. And I appreciate your time. I think here, let me make this argument, and I'll come back and reply. You'll save some time. Yes, sir. Thank you. Mr. Pearson. May it please the Court. Dwayne Pearson for the United States of America. Your Honor, Apprendi, in Apprendi, the Supreme Court set the standard that all elements for an offense must be charged in the charging document. If those elements increase the penalty. The indictment in this case was clear from the beginning that the defendant was not facing the one-year maximum penalty. In fact, if we go to the indictment itself, the face of the indictment, it shows that while it tracks the language of 248B, it goes on to specifically claim that the defendant did block the front doors, making it difficult for employees and patients to get around him and enter the clinic. It does not allege any intimidation. To go to your point, Judge Rushing. But doesn't it, like the sentence before, alleges intimidation? It does, but that's why there's a clarification sentence, because in tracking the statute, the statute can be violated either by intimidating or interfering with. If he had blocked the doors with a firearm, wouldn't that have been intimidating? It could be, yes. But the indictment doesn't have to tell us all those details, and it doesn't tell us all those details. No, it doesn't tell us all those details, but under Apprendi, in order for the government to go forward on the higher penalty, we would have to allege it in the indictment, in this indictment or in information in this case. And this doesn't say that. So you're saying that this indictment, as originally written, would not have let you pursue a one-year penalty? No. Why? Because of this extra sentence explaining that he blocked the doors? Because we would have had to allege violence. But you allege, by physical obstruction, he did intentionally intimidate and interfere and attempt to intimidate, and then you would show me that the statute defines intimidate as to place a person in reasonable apprehension of bodily harm to him or herself or to another. How do you do that without at least a threat of violence? How do you place a person in reasonable apprehension of bodily harm? Your Honor, it's the government's position that in this case, he was charged with interfering with. But you realize the indictment also says intimidate. I do, Your Honor. And you didn't strike that part. You amended it to take out the one after the B. We grant you that, but you never struck the intimidation. That's correct, Your Honor. So how did it not allege intimidation? Your Honor, I believe the better practice would have been to strike it, and the government did not do that. It is our position that we were clear in going the extra step to outline specifically what we were alleging that the defendant did, that it would take it out of that. But, Your Honor, your honest point is well taken. It would have been the better practice to strike those two terms from the indictment. It's a strange situation, right, because you would think in most cases when the government says, hey, we're only going to speak six months, don't worry, that a defendant would be, like, glad about that, right? Oh, it's not a year. It's six months. That's great. But here he actually is wanting it to be a year because of the jury rights. So I understand why the government might have thought everybody's going to be on board with this, but the face of the indictment is hard to get around in terms of the definition of intimidate. Yes, Your Honor. But that was presented to Judge Anderson, and he spelled it out on page three of his opinion. Yes, Your Honor. And he ruled specifically the defendant faces a maximum term of six months. Yes, Your Honor, and that goes to- And was that correct? If someone has been accused in the indictment of intimidation under the statute, do they face the penalty of six months? If all they were charged with is intimidation and the statute, or excuse me, and the indictment follows guidance and apprendi and makes it and alleges that, then I believe it could be, but I do not believe that's where we are in this case. I'm sorry. I didn't follow. So if under the FACE Act someone's indicted with intentionally intimidating, physically obstructed by intentionally intimidating, do they face one year or six months? If they're- Max. I'm sorry? Max. If they are charged with intimidating based on the definition, yes, Your Honor, that could be a one year. That could be a one year charge. But you're saying it wasn't here. But it was not here. And that was explained by the judge in his order. Yes, Your Honor. He calls it an order. So why wasn't it here? Order on defendant's right to a jury trial, and he was the trial judge. Yes, sir. Can the trial judge amend the indictment? Not typically. However, the government can amend an information on a petty offense. Right. And in this case, Your Honor, as I- So this is not an information, you said. Yes, they could amend it on an information. They could. We could. And it is a bit of an odd circumstance because since it is a six-month offense, the government can present it to a grand jury or we can simply present it as an indictment.  Well, here you could, the U.S. attorney could file an information. But you said this is an indictment. Yes, Your Honor. But the judge, and it was tried by the judge, and the judge wrote, explained and said specifically, defendant faces a maximum term of imprisonment for six months. Yes, it was very clear on the record. Yeah. And in fact, Your Honor- Did Lewis address this? I thought the Supreme Court in Lewis faced a situation where the district court said, you know, I'm only, I'm going to, I won't sentence you to more than six months, so don't worry about it, even though the court, the statutory max was more. I think the court didn't have to reach that, but they were faced with a situation, well, would that be enough? I guess what's your answer there? If Judge Anderson said, you know, no matter what the indictment says, I won't sentence you to more than six months. So does that mean no jury? Your Honor, I do believe the Lewis case stands for what we are looking at is the emphasis on the maximum term. If the maximum term that a person could get is six months, then they would not be entitled to a jury trial. But Judge Anderson didn't say, but if whatever it says, but referring to the indictment, but he explains ahead of time, he says specifically defendant faces a maximum term of six months plus a fine. Yes, Your Honor. And if I may, I would also like to point out that the defendant was never under the impression that he was looking at a one-year penalty in this case. If we go back to the record during his initial appearance, when the court indicated that there was a one-year penalty, the defendant himself made the correction and said, no, I believe that I'm only looking at six months because it was a nonviolent offense. And I believe that takes us to the behavior that is incorporated in Rule of Criminal Procedure 7C2, which would require a defendant to show that he was misled and thereby prejudiced. The defendant in this case was never misled as to what he was facing. From the very beginning, he knew he was looking at a six-month offense. I do understand the court's questioning about what an indictment could say. But in this particular case, the defendant only ever was looking at that six-month penalty. As a follow-up to Judge Rushen's question, earlier you stated that if the indictment, if he was, if the government was alleging intimidation or physical intimidation or harm, that you would have had to state more in the indictment. Can you explain that? Yes, Your Honor. Apprendi stands for the proposition that the government is required to plead and prove anything that increases the maximum penalty in the indictment and then subsequently prove it to generally the jury. In this case, the government would have had to specifically prove violence in order for the one-year penalty. It would have to allege it and then prove it in order for that one-year penalty to apply. It is a bit odd the way the statute is set up in that B-1 talks about the typical one-year penalty. Then there's a paragraph below B-1 that is not designated as 2 or paragraph C or anything like that. I believe the colloquial term is flush language of the statute is at the bottom. It provides that penalty-limiting instruction. That penalty-limiting instruction. Penalty-limiting allegation. Yes, Your Honor. Description. And that's what I'm the point I'm trying to make to you. The judge who was the judge and jury, he tried the case. Yes, sir. He said this indictment, under this indictment, the defendant faces a maximum term of imprisonment of six months. He wasn't the appeals court judge. He was the judge that had this case. But the question here is whether it was a jury or presented only to the judge. He says he faces six months based on this indictment. And the question is, was that correct? And I'm interested in your answer to Judge Benjamin's question about what else would you have to have alleged in the indictment to have received a one-year maximum to allege intimidation. Yes, Your Honor. So the penalty-limiting instruction actually talks about a case of nonviolence. So we would have to specifically say that it was not a nonviolent obstruction. We would have to allege violence in some way. And I believe in this case, the government went far, far enough in the indictment to say that what we're alleging was that he made it difficult to enter, and that is not an allegation of violence. So you would have, so I guess under Holt, if you were to say we were, because it would be substantial that you were going to add the violence piece, you would have, at that point, you would have had to take it back before the grand jury. Yes, Your Honor. We would have to say something along the lines of, to take Judge Rushing's example, Ann did brandish a firearm in order to intimidate, or Ann did use physical force against another individual. We would have to specifically allege that. What if the indictment didn't have anything, you know, the clause coming after, in that the defendant did block the front doors, making it difficult? What if you just didn't have that part? And so it alleged the defendant, by physical obstruction, did intentionally intimidate and interfere, or attempt to intimidate and interfere with employees and patients, blah, blah. But then you didn't have how he did it. Well, Your Honor, I think in that case, that's really where Apprendi applies, because at that point, it would be unclear as to what the government was saying. It would be unclear as to whether or not we were saying that he intimidated or whether or not he interfered with, and based on. But that's, I mean, would that be an Apprendi problem, or would that just be like he could ask for you to specify what he did? That's not a problem that you're not putting in the elements that would subject him to a higher penalty. You've put in the element. You've put in that he intimidated, which involves violence. Your Honor, but because the statute can be violated either way, with the intimidation or the interference, in order for us to seek the higher penalty under Apprendi, we would have to make it clear. Although you've put him on notice that you might be subject to the higher penalty or the lower penalty. Well, if it's vague and you've got those alternatives, you just give him a – the judge will order you to give him a bill of particulars. Right. There's a rule on bill of particulars. Yes, Your Honor. And the bill of particulars could explain that. Yes, Your Honor. What the facts are that justifies this charge. Yes, Your Honor. And what you're saying, I think, you all, and the way good prosecutors do it, they put the particulars in the indictment. Yes, Your Honor. They don't have to give a bill of particulars. Yes, Your Honor. In this particular case, or I'm sorry, to go back to Judge Rushing's point, I believe while there could be a bill of particulars, I do believe there is an Apprendi problem if the statute is unclear and one of the ways to violate the statute increases the penalty. Because at that point, a defendant is looking at something that now he's got to show up at trial and prove. Meaning, in a case like this, the defendant would have to show up in trial and prove that his violation was the nonviolent. And that is a burden shifting problem. Because now, instead of the government having to allege all of the elements that increase the penalty, we would then be putting a burden on the defendant to come in and prove that his violation was solely a nonviolent issue. To put a fine point on that, it is the position of the government also that, again, this really falls into things contemplated under Rule 7c2. As the defendant cannot show that he was misled, as he was very clear and knowledgeable on what the penalty for the violation was from the very beginning, he can't show that the error would be grounds to dismiss the indictment or reverse his conviction in this case. To address whether the FASE Act creates an inherent right to a jury trial, Your Honors, the defendant claims that there is a circuit split. However, a closer inspection shows that his reliance on the district court case of Lucerna was faulty because that court did not perform the required analysis. If we go all the way back to Muniz in 1975, the Supreme Court even there held that there is no talismanic significance to the statutory definition. And it then rejected the view that an increase in the fine would necessitate a jury trial in that case. If we take that next to Blanton in 89, that court served as the framework for the presumption that a six-month offense is presumed to be petty and that you would get a jury trial only if the additional penalties were so severe as to warrant one. We then move to Natchitol in 93, which emphasized that only in rare circumstances would something other than incarceration shift the crime from petty to serious. And then we run into Lucero in 95, quoting McAllister. That McAllister case that Lucero is based on was decided before the Supreme Court decided Blanton. And it did not perform the required analysis that came out of Lewis, that came out of Natchitol. And I would also point out that even in that McAllister case, it says specifically that until the Supreme Court speaks further, the definition of petty will be determined. Well, the Lewis and Blanton cases are the Supreme Court speaking further, saying that what we need to do is look at the maximum penalty and that should be the guiding force that we have. As noted in 96, in the 96 Sedona case, an increase in fine, a modest increase in fine, is what we saw in that case. And it's nearly identical to the increase noted in Blanton. In fact, the Blanton case had a five-time increase in fine from $1,000 to $5,000. If we're just talking real dollars, that's only $4,000 back in 1993. The government would point out that the increase in fine in this case, from $5,000 to $10,000, is likely less in real dollars in 2025 than the $4,000 increase was back. You're saying we ought to be able to take inflation into account? I'm just pointing out in terms of making – We've never heard that. Your Honor, I'm just saying in terms of taking into account whether or not something is serious, it is appropriate to take into account real dollars. If $5,000 – That's what you're saying. We've got to consider – we can't look at the face of the statute without the penalty. We have to look at inflation. All of it, Your Honor, in making this determination as to whether or not the increase would warrant treatment as serious. Accordingly, after Lucero's decision, the Second Circuit, the Seventh Circuit, and the 11th have specifically held that first-time, nonviolent, face-act offenses are not serious and do not require jury trials. This court should join them. Contrary to his argument, the facts of this case show that the defendant was not charged with a serious event, and he cannot overcome this presumption that the additional $5,000 penalty is so onerous that it would make his first-time, nonviolent conviction serious. The government would respectfully request the judgment of the district court be affirmed. Thank you. Thank you very much, Mr. Pearson. Mr. Brown. This is briefly in reply. The McAllister case says that until the Supreme Court tells us otherwise, they have followed the petty offense statute. How do you get past Judge Anderson's ruling? Yes, sir. Before the trial. Yes, sir. That the defendant faces a maximum term of imprisonment of 6 months. Judge, I don't understand. And put it in writing. Yes, sir. And provided it to you. And says, therefore, the court finds that the defendant is not entitled to a jury trial. Yes, sir. Thus, this matter will proceed to a bench trial on February the 6th. That's a month after he wrote this order. Yes, sir. We don't know whether there's any such trial. He said, this is the judge. Yes, sir. Who will try the case. Yes, sir. The defendant faces a maximum term of imprisonment of 6 months. In this case. Yes, sir. With the particularization of what's alleged in the indictment. Yes, sir. You got the language of the statute first in the indictment. Yes, sir. Then you got the specification of what the facts are that they're going to, that they allege they're going to prove. And the judge took that into account and says, the maximum term under this statute is 6 months. Yes, sir. I don't dispute that those are his words. And, Judge, the reason I briefed Issue 1 is that on its face the indictment alleges an offense that carries one year. And it was never amended. There is one charge in the indictment. Well, you have to read the whole indictment. Yes, sir. That whole indictment was never changed. And the judge did. He read the second part also. Yes, sir. And under the facts alleged, as Judge Anderson said, it's 6 months. And, Judge, the only thing I can tell you is that thing. Judge Anderson didn't come over on a pickle boat. He's been around. Oh, no, no. I have great respect for Judge Anderson. I think he's a very reasoned and moderate judge and around for a long time and very well respected by everyone. And the only thing I can say to the indictment is that, yes, ma'am. That sounds kind of like a harmlessness argument, I guess, that, like, well, the judge said he was only – this was an offense for only 6 months. So, like, how were you injured? So how was Mr. Lefamine injured if that was the case? How was he injured by not getting his jury trial? Right. Because the indictment itself formalistically alleged a 1-year offense. And you think he was entitled to a jury. Because it was not actually amended. And I understand for every purpose except the document. And that is why I come back to those other cases that look back on prior convictions for, like, armed career criminal purposes. They look at the charging document. And in this case, this charging document would appear to allege that my client intimidated someone subject up to 1 year. On the face, words of that. And they would never go back and look at Judge Anderson's order. Or the fact anyone else could send it. There's no place under the shepherd, I believe, of some of those cases that talks about how to look at prior convictions. And I'm just saying when you look at it in retrospect, he has this one indictment. It's not like Judge Anderson found as a lesser included and acquitted him of the greater. Although that, in some respects, is what the order of the jury trial says. But you would agree that there was, that counsel acknowledged the amendment. There was no objection. Yes, ma'am. All of that. And I think the government says that that is arraignment even. Mr. Lafamine acknowledged that it was 6 months. Yes, ma'am. And the purpose of the indictment is to put defendants on notice of the charges. It is. But there's still a requirement that it allege the facts that he's charged with. And it alleges the statute. And I know you can have a scrivener's error that doesn't change it. But in this case, it would be hard pressed for me to tell a client who came in with that indictment he did not face one year. They would be very hard pressed to say that on the face of the indictment. And what about their argument, the government's argument under 7C2, that this was just a, I guess, a scrivener's error. But that the amendment, but everything else that happened, I guess, in the case. Well, I think the indictment language alleges of one year. And Judge Rushing has pointed that out. And I don't think any other facts are necessary to make an intimidation. I think intimidation would be the subjective view of the indictment being obstructed. They're saying under Rule 7C2 that there's no alterations that they made before, I guess, the court did not. Because I don't believe they made the alterations. That's my point. I think if they would have amended it, it would not have had a problem under 7C. They just did not do it. It's like the amended complaint. Well, I think the government's point is 7C2 says an error in a citation or an omission in a citation is not grounds for a reversal. So if we're talking about just the citation point, you have a hard. Right. And I'm not. And I'm not. I believe it's both the language intimidate clearly alleges some type of threat to harm someone because it says harm. The word violent actually never appears anywhere except exclusively nonviolent in the penalty section. The word violence appears nowhere in it. One last question. So under Apprendi, the government stated that they would have to, if there was violence, I guess, if you use Judge Rushen's example, if he was standing there with a gun or something, then you, do you agree with the government's assertion that the indictment would have required more? I do not. That's what I was saying to begin with. If a client brought me that indictment, I believe it charges a one-year offense. Intimidate, and again, that doesn't use the word violence. I don't think they have to say violence. Well, you can advise your client the statute permissibly could charge a one-year offense. Yes, sir. But you've got a trial judge who rules in this particular case. Yes, sir. As to this indictment. Yes, sir. It charges six months. Yes, sir. And we agree. That was what the ruling was a month before the trial. We agree. And he conducted the trial, and he didn't sentence him more than six months. He did not. He did find it intimidating. So the judge understood it was only six months, and he so ruled.  And explicitly spelled it out on this record. Yes, sir. Absolutely. And if I may, one second. The Lewis opinion actually is still consistent. Lewis defended only a six months per count. But they could have been run consecutively, and that was the issue. And the court there treated it as one offense. So they still were all consistent with the petty crimes. Mr. Brown, you're appointed. Yes, sir. And we really appreciate your service. Thank you for having me here. And I always enjoy coming to court. To the court system. Yes, sir. Doing that. Thank you very much. Thank you, Judge. And we'll adjourn court for the week. Signe and I, and we'll come down and greet counsel. And we're retired of our conference. And thank all of you for being here. And safe travels. This honorable court stands adjourned. Signe and I, God save the United States and this honorable court.
judges: Robert B. King, Allison J. Rushing, DeAndrea Gist Benjamin